In the Matter of JULE L. JANOVER, an Attorney, Respondent.

First Department, October 28, 1932.

*Einar Chrystie,* for the petitioner.

*Charles H. Griffiths* of counsel [*Griffiths & Content,* attorneys], for the respondent.

FINCH, P. J. The respondent was admitted to practice as an attorney and counselor at law in the State of New York on May 15, 1905, at a term of the Appellate Division of the Supreme Court, First Department.

By the petition herein, as amended, the respondent was charged with misconduct as an attorney at law in two instances, in substance as follows:

Charge No. 1. Charles Hadlich died leaving him surviving his widow, Emma Hadlich, and a daughter by a previous marriage named Charlotte Kafer. He left a last will and testament in which his wife was named as his sole legatee and executrix. The will had been prepared by the respondent and after the death of Hadlich his widow retained the respondent to settle the estate. Funds deposited in Hadlich's account in various banks aggregating $10,564.93 were all transferred into one account in the Bank of Manhattan Trust Company in the name of " Estate of Charles Hadlich, deceased." The respondent retained the pass book and check book of this account and statements showing withdrawals and deposits were sent to his office and retained by him.

It is charged that after the estate account had been opened the respondent from time to time requested Mrs. Hadlich to sign

blank checks thereon; that these checks were never seen by Mrs. Hadlich after she had signed them until they were produced by the respondent before the petitioner's committee on grievances; that among the checks which Mrs. Hadlich signed pursuant to the request of the respondent and upon his representations that the same were to be used for the purpose of settling the estate was one check dated May 31, 1929, for $550, and another check dated August 20, 1929, for $891.28, that being the entire balance then remaining in the estate account; that the respondent caused these two checks to be made payable to Janover & Janover and without the knowledge or consent of Mrs. Hadlich collected the proceeds thereof and converted the same to his own use, no part of this money having been repaid to her. It is also charged that the respondent failed and neglected to take the necessary steps to pay the transfer tax on the Hadlich estate or to settle the same.

Charge No. 2. In April, 1930, Mrs. Cecilia Hart retained the respondent to bring an action for separation against her husband and an action for alienation of her husband's affections against a Mrs. Reynolds. She paid the respondent various sums aggregating $125 on account of his fees for services to be rendered therein. The respondent commenced a separation action in behalf of Mrs. Hart against her husband and obtained a court order allowing her $20 a week as alimony *pendente lite* and a counsel fee of $100. The defendant in the action left the State of New York and failed to pay any part of the counsel fee or alimony. Mrs. Hart desired to effect a reconciliation with her husband. She received information that her husband had gone to Philadelphia. On January 10, 1931, Mrs. Hart gave to the respondent the information which she had regarding the whereabouts of her husband. The respondent then agreed to go to Philadelphia on the following Monday (January 12, 1931) for the purpose of investigating the matter. Pursuant to request of the respondent, Mrs. Hart then gave him the sum of sixty dollars for disbursements and fees in connection with the proposed trip. On January 14, 1931, respondent advised Mrs. Hart that he had been to Philadelphia; that he had consulted a Philadelphia attorney; that he had located her husband; that he had attached the automobile and salary of her husband; that her husband had stated that he would come back to her and that it would be necessary for the respondent to return to Philadelphia on the following day to arrange the details of the reconciliation. The respondent then requested Mrs. Hart to give him a further sum of sixty dollars to pay the additional expenses and fees in connection with the second trip to Philadelphia, and Mrs. Hart gave him that amount. The respondent subsequently reported to Mrs.

Hart that for various reasons the second trip had been postponed. The statements made to Mrs. Hart by the respondent regarding his alleged first trip to Philadelphia and the action taken by him while there were all false. On January 21, 1931, Mrs. Hart accused the respondent of not looking after her interests and he then promised to go to Philadelphia on the following day. On January 23, 1931, the respondent did go to Philadelphia and consulted an attorney named Milton Apfelbaum concerning Mrs. Hart's matter. While in Philadelphia he sent Mrs. Hart a telegram, reading as follows: " Have made new satisfactory better arrangements Will telephone you tomorrow." Prior to January 23, 1931, when he called upon Apfelbaum, the respondent had not made any arrangements with anybody respecting the matter of Mrs. Hart. After he had called on Apfelbaum on January twenty-third, the respondent received a letter from Apfelbaum stating, in substance, that nothing could be done except upon the payment of fees and expenses for detective services and that a preliminary investigation showed that the information that Mr. Hart was working for a Philadelphia firm was incorrect.

It is charged that the respondent's statements to Mrs. Hart that he had gone to Philadelphia, interviewed one Cohen and Mrs. Hart's husband, attached his car and salary and made arrangements for a reconciliation, were false and made for the purpose of inducing her to pay over to him money claimed for expenses, as above stated. After Mrs. Hart discovered that the statements of the respondent and his reports to her regarding his visits to Philadelphia were untrue, she demanded the return of the money which she had paid him. On February 3, 1931, the respondent paid over to her the sum of fifty dollars and sent her a letter in which he stated as follows: " Enclosed please find check for $50 on account which is all I can send you today, not having received return of money from Philadelphia." Thereafter he sent a second letter to Mrs. Hart, in which he again stated that no part of the money which he had paid to the Philadelphia attorney whom he had consulted regarding the matter had been returned to him. The respondent has not paid Mrs. Hart any part of the balance of seventy dollars as promised. The statements and representations made by the respondent to his client to the effect that he had paid any part of the $120 which she had given him to any attorney or other person in Philadelphia, are wholly false. He did not use any part of the money received from Mrs. Hart for that purpose. The respondent rendered no substantial service in return for the money which Mrs. Hart gave him.

The respondent filed an answer to the first charge, in which in

substance he denied that he obtained any money from the executrix of the Hadlich estate by misrepresentation or that any checks upon the estate account were signed by Mrs. Hadlich in blank, and in which he further asserts that the checks for $550 and $891.28 drawn on the account of the Hadlich estate to the order of the respondent's firm, the proceeds of which were used by the respondent, represented loans made to him by Mrs. Hadlich upon his request. He also alleges in his answer that the transfer tax proceedings referred to in the petition have been completed.

The respondent did not file any formal answer to the second charge, but in the course of the hearings before the official referee it developed that his answer thereto is in substance a general denial of all misrepresentations to his client, Mrs. Hart, except that he admits he told her a falsehood when he stated in substance that he had used part of the money received from her for the purpose of paying fees to the Philadelphia attorneys.

The matter was referred to an official referee to take testimony with respect to the charges and to report the same to this court with his opinion thereon.

The learned referee has duly reported, finding the respondent guilty as charged.

The matter now is before this court upon the motion of the petitioner for confirmation of the report of the referee and for such other action as may be deemed just and proper.

The record fully sustains the findings of the learned referee.

In respect to the first charge, checks for $200 and $250, dated February 27, 1929, and March 6, 1929, respectively, were payments on account of services rendered by the respondent. The charges against the respondent relate to his conduct in connection with the signing and delivery to him by Mrs. Hadlich of the remaining three checks to the order of the respondent's firm, namely, $185, $550 and $891.28. Mrs. Hadlich testified that she was induced to sign the checks for $185 and $550 upon statements of the respondent that the proceeds were to be used for the payment of advertising, taxes and other expenses of the estate. She testified she had no recollection of ever signing a check for $891.28. The respondent testified the check for $185 was given him in payment of services rendered in response to his request, and denied he had ever stated that any part thereof was to be used for advertising. He testified further that the checks for $550 and $891.28 were signed by Mrs. Hadlich after she had agreed to lend him money to pay medical and hospital expenses in connection with an operation upon his daughter. The testimony of Mrs. Hadlich with respect to the representations of the respondent that the checks for $185 and

$550 were to be used for expenses of the estate is clear and convincing. She is corroborated by the testimony of her nephew. Her testimony that the respondent at no time requested her to lend him money also carries conviction.

On the other hand, the testimony of the respondent is equivocal and inconsistent. He endeavored to create the impression that he had rendered substantial services to the estate by testifying he had had one Mrs. Kofer in his office on several occasions in an endeavor to eliminate a contest of the will which Mrs. Kofer contemplated.

Mrs. Kofer was a stepdaughter of Mrs. Hadlich. She signed a waiver within five days of the date of the petition for probate. She resided in New Jersey, but came voluntarily within this jurisdiction and testified that she had accompanied Mrs. Hadlich to the office of the respondent, where she signed the waiver. She further testified that prior to that occasion she had never seen or communicated with the respondent and had never had or expressed any intention of contesting the will.

So also was the contention of the respondent that the greater portions of the money in question were loaned to him shown to be false. It was demonstrated at the hearings, by the production of the hospital records of the three institutions which the respondent's daughter was alleged to have visited, that in two instances the visits occurred some four and two years, respectively, before the Hadlich transaction. The third instance did not take place until several months after the respondent had obtained the money from Mrs. Hadlich. The respondent expressly admitted that he could not name any person to whom he had paid any part of the money received from Mrs. Hadlich on account of or in connection with the illness of his daughter.

The learned referee states: " Mrs. Hadlich is a housewife inexperienced in business. She had never met the respondent prior to the death of her husband. * * * The respondent did not offer Mrs. Hadlich any security for the alleged loan, and it is not claimed that he gave her any evidence of his indebtedness. She had no other legal adviser at the time of the transaction. There were unpaid judgments against the respondent at the time and on his own confession he was heavily in debt."

The learned referee further stated as follows: " After observing the witnesses and carefully considering all the evidence, I am convinced that Mrs. Hadlich and her nephew were truthful witnesses and I believe them. On the other hand, the contradictions in the respondent's testimony and the improbability of his story force me to the conclusion that he is unreliable and untruthful."

With this finding and conclusion this court is in entire accord.

With respect to the second, or supplemental, charge against the respondent, it is sufficient to say that the facts set forth at length therein are largely undisputed and are clearly sustained in all particulars by the evidence.

The respondent's unfitness to remain a member of an honorable profession has been clearly demonstrated. He should be disbarred.

MERRELL, McAVOY, MARTIN and TOWNLEY, JJ., concur.

Respondent disbarred.